**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (Bar No. 226112)
karl@kr.law
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158

**POLLOCK COHEN LLP**
Raphael Janove (*pro hac vice* forthcoming)
rafi@pollockcohen.com
Adam Pollock (*pro hac vice* forthcoming)
adam@pollockcohen.com
111 Broadway, Suite 1804
New York, NY 10006
Telephone: (212) 337-5361

Attorneys for Plaintiffs and the Proposed Classes

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ASHLEY SOFRANAC**, **ROBIN CANALE**, and **RICARDO MENDOZA**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**iFIT INC.**, a Delaware corporation**,** and **iFIT HEALTH & FITNESS INC.**, a Delaware corporation,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Case No. _____                      **CLASS ACTION COMPLAINT**

1    Plaintiffs Ashley Sofranac, Robin Canale, and Ricardo Mendoza (collectively,
2  "Plaintiffs") bring this class action on behalf of themselves and all others similarly situated
3  against iFIT, Inc. and iFIT Health & Fitness Inc. (collectively, "NordicTrack" or
4  "Defendants") for breaches of warranty under the Magnuson-Moss Warranty Act, and
5  allege the following based upon personal information and investigation, and the
6  investigation of their counsel, and on information and belief as to all other allegations:

**INTRODUCTION**

8    1.    NordicTrack sells expensive exercise equipment, such as bikes, treadmills,
9  ellipticals, and rowers, for consumer use.

10    2.    The exercise equipment is designed to run with the operating software "iFIT."
11  The software is necessary for the equipment to function, controlling the bike and offering
12  users classes and other features to enhance their workouts.

13    3.    This centrally important iFIT software does not work on Plaintiffs' and the
14  proposed Class members' equipment.

15    4.    Class members' equipment cannot run the iFIT software because the
16  computer equipment in the console is not adequate to do so (Plaintiffs refer to this as the
17  "Console Defect"). For some, the equipment never worked. For others, their machines
18  were rendered unusable after updating the iFIT software.

19    5.    Plaintiffs' and the Class members' equipment simply do not have the
20  hardware capability to run iFIT software.

21    6.    On information and belief, the equipment's console—the computer
22  equipment housed in the monitor screen that controls the bike—does not have processing
23  power adequate to properly run the iFIT software. As the iFIT software gets updated it
24  becomes larger and requires more computing power, outstripping the capabilities of the
25  console's hardware.

**PARTIES**

27    7.    Plaintiff Ashley Sofranac resides in Livermore, California. She purchased the
28  NordicTrack S22i Commercial Studio Cycle ("S22i") in September 2020, and the

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   equipment suffers from the Console Defect.

2       8.      Plaintiff Robin Canale resides in Roseville, California. She purchased a

3   NordicTrack Commercial 1750 Treadmill in November 2016. In August 2021 she

4   purchased a subscription to iFIT, which she then renewed in January 2022. Thereafter the

5   equipment suffered from the Console Defect.

6       9.      Plaintiff Ricardo Mendoza resides in Tinley Park, Illinois. He purchased a

7   NordicTrack S22i Commercial Studio Cycle ("S22i") in March 2022. After a software

8   update, his bike started suffering from the Console Defect.

9       10.     Defendant iFIT Inc. does business as NordicTrack and is a Delaware

10  corporation headquartered in Logan, Utah.

11      11.     Defendant iFIT Health & Fitness Inc. is a Delaware corporation

12  headquartered in Logan, Utah. iFIT Health & Fitness Inc. is the corporate parent of iFIT

13  Inc.

14      12.     Defendant iFIT Inc. and Defendant iFIT Health & Fitness Inc. (together,

15  "NordicTrack") are health and fitness technology companies that sell NordicTrack-branded

16  fitness equipment, including stationary bikes, treadmills, ellipticals, and rowers, that is

17  paired with "iFIT" exercise software.

18                          **JURISDICTION AND VENUE**

19      13.     This Court has subject matter jurisdiction pursuant to the Class Action

20  Fairness Act, 28 U.S.C. §1332(d), because the aggregate amount in controversy exceeds

21  $5 million, exclusive of interests and costs; the number of members of the proposed

22  Classes exceeds 100; and many members of the proposed Classes (defined below) are

23  citizens of different states than the Defendant.

24      14.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§1331

25  & 1332(a)(1).

26      15.     This Court has personal jurisdiction over Defendants because they

27  committed the tortious acts alleged herein in this District, regularly conduct business in this

28  District, and have extensive contacts with this forum.

Case No. _____          2          **CLASS ACTION COMPLAINT**

16.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and Defendants transact substantial business in this District.

<div align="center"><strong>INTRADISTRICT ASSIGNMENT</strong></div>

17.     Because a substantial part of the events which give rise to Plaintiffs' claim occurred in Alameda County, pursuant to Local Civil Rule 3-2, this action should be assigned to the San Francisco or Oakland Division.

<div align="center"><strong>FACTUAL ALLEGATIONS</strong></div>

**A.     NordicTrack: A Brief Company History**

18.     NordicTrack began selling ski exercise machines in 1975. By the early 1990s NordicTrack expanded beyond ski machines, producing non-motorized and motorized treadmills, weight training machines, elliptical machines, and various other fitness products.

19.     In the early 1990s, NordicTrack expanded at an unsustainable rate. In 1997, the company downsized and eventually filed for bankruptcy. The NordicTrack name was then sold to ICON Health & Fitness, which is now called iFIT.

20.     In 2020, iFIT reported sales of $3.8 billion and an estimated 16,000 employees. The company currently offers treadmills, bikes, ellipticals, rowers, and strength-training equipment.

21.     iFIT boasts "over 6.1 million Total Members and 1.5 million Total Fitness Subscribers in over 120 countries."[1] iFIT has also become "the #1 provider of large fitness equipment in the United States," a development it explains was "[d]riven by the adoption of our iFIT platform."

22.     Defendants credit their successes to selling hardware with iFIT software and iFIT classes:

> Our iFIT operating system provides interactive experiences on all of our
> connected equipment brands, allowing members to gain access to our full

---

[1] *See* iFIT Health & Fitness Inc. Form S-1 SEC Registration Statement (Aug. 31, 2021).

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

library of iFIT *live* and on-demand content for $15/month for individuals or $39/month for families of up to five (or $396 when paid annually). ***We believe the combination of our proprietary software and experiential content connected with our interactive hardware*** creates a compelling value proposition for our rapidly growing member base and generates attractive recurring subscription revenue.

**B.    The iFIT Software Exceeds the Capabilities of the NordicTrack Exercise Equipment.**

23.    For NordicTrack exercise equipment to function as intended, consumers must pay for a subscription-based iFIT membership, which ranges from $15 to $40 per month.

24.    The exercise equipment is designed to use iFIT software, and Defendants conspicuously point to the software, including its ability to connect users to streamed workouts and live classes, as a key feature of the equipment.

25.    For instance, NordicTrack's description of its equipment prominently features iFIT's software, including an "iFIT experience," an "iFIT Workout Rating," "Streamed Worldwide Workouts on Demand," and an "immersive iFIT workout":



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21





22    26.    However, as illustrated by Plaintiffs' and the Class members' experiences,

23  numerous models and versions of the exercise equipment cannot run the iFIT software.

24  The pieces of exercise equipment have a Console Defect, entering consumers' homes

25  already obsolete, or near obsolescence.

26    27.    On information and belief, the exercise equipment's monitors, which contain

27  the motherboard and computing hardware that run the iFIT program, simply do not have

28  the capability to run the iFIT program.

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

28.    To put it another way, it is analogous to running a modern software program on a computer that was designed a decade previous.

29.    The Console Defect may render these devices entirely inoperable, since their functionality is controlled by the iFIT software, their central feature. Without a functioning computer, these pieces of equipment are not usable for their intended purposes, or for any purpose.

30.    While Defendants' representatives have claimed that this is a network or IT issue, Plaintiffs' and Class members' experiences demonstrate otherwise.

31.    After months of issues with her machine, Plaintiff Robin Canale was eventually told the inconvenient truth by customer service representatives: that her treadmill, sold to her only a few years prior, was too old to run the latest version of the iFIT software. iFIT support required Plaintiff Canale to install a software update to the console. After the update, the console no longer worked and could not be repaired.

32.    Plaintiff Ricardo Mendoza's equipment experienced a precipitous increase in frequency of technical issues immediately after a software update. He was told that his equipment's issues were caused by his home Wi-Fi network. But Plaintiff Mendoza, an IT professional, ensured that the speeds and frequency band of his network were within the requirements of his S22i.

33.    Another NordicTrack customer related that iFIT representatives informed him that his S22i's lack of functionality was caused by his Wi-Fi network. The customer, who has also worked in IT, quickly tested his home system to find it well within the bike's requirements. When the customer presented an iFIT representative with the findings of his network diagnostic tests, he was told that he needed a new console for his bike.

**C.    Plaintiffs' Equipment Cannot Run The iFIT Software and Defendants Refuse To Fix The Issue.**

<u>Plaintiff Ashley Sofranac</u>

34.    Plaintiff Ashley Sofranac ("Plaintiff Sofranac") purchased the NordicTrack S22i Commercial Studio Cycle in September 2020, after a few months of sheltering in

**CLASS ACTION COMPLAINT**

place at the hands of the COVID-19 pandemic. She needed a way to continue her fitness journey in the safety of her home.

35.    From the start her S22i was not fully functional. The screen would freeze often during rides but would unfreeze and continue functioning correctly after a period of a few minutes.

36.    After 6 months of ownership, Plaintiff Sofranac's S22i could not be used for iFIT workouts at all. Every time she loaded a workout the bike's console froze. She was only able to use the bike for manual rides, rather than for the workouts and classes for which the bike is intended.

37.    After a little more than a year of ownership, Plaintiff Sofranac's S22i was essentially unusable. Rather than freezing when used, it became simply unable to turn on at all. It was, and remains, trapped on a loading screen (pictured below), unable to be used for any purpose.



38.     As her bike's Console Defect degraded the equipment's function, Plaintiff Sofranac sought help from iFIT customer support. She submitted a ticket to iFIT customer support, only to be told that she needed to contact ICON Fitness. ICON representatives then sent her back to iFIT. Plaintiff Sofranac submitted another ticket to iFIT.

39.     When iFIT finally returned with advice, it merely suggested uninstalling and reinstalling the iFIT software and ensuring that the time zone was set correctly. Plaintiff Sofranac attempted these fixes, but neither worked.

40.     Finally, iFIT suggested a "paperclip reset" of the bike by inserting a paperclip into the reset button. This failed as well, and Plaintiff Sofranac again contacted iFIT representatives.

41.     At this point, almost two months after contacting iFIT customer support, Plaintiff Sofranac was told that her problem was "most likely a hardware/mechanical/electrical one," told to contact a different customer support team, and cast off without a solution.

<u>Plaintiff Robin Canale</u>

42.     Plaintiff Robin Canale ("Plaintiff Canale") purchased a NordicTrack Commercial 1750 Treadmill in November 2016 that came with a 5-year parts warranty. In August 2021 she purchased a subscription to iFIT.

43.     She intended to use iFIT on the treadmill for the purpose of training to hike the Camino de Santiago. She would create custom maps to simulate the trails she would soon be hiking in person.

44.     From the start of her iFIT subscription in August 2021, Plaintiff Canale experienced intermittent failures of her machine. At that time iFIT customer service representatives informed Plaintiff Canale that her machine was too old to run the latest version of the iFIT software. Her only recourse would be to reset the machine and reinstall the firmware.

45.     In or about March 2022, iFIT automatically updated the software on Plaintiff Canale's treadmill, which caused the treadmill to become unusable. When turned on, it

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   would continually reboot, trapped in a cycle of loading and crashing.

2       46.     Plaintiff Canale spent many more hours on the phone with iFIT customer

3   service representatives, who again told her that she needed to reset the machine and

4   reinstall the firmware.

5       47.     With the problem persisting—Plaintiff Canale still could not use her machine

6   at all—customer support eventually suggested replacing the console unit of the treadmill

7   at a cost of $250. Unfortunately, the console unit was no longer available for sale and

8   customer support convinced Plaintiff Canale to purchase a new treadmill. The new

9   machine failed from the first day. After working with iFIT and NordicTrack support for three

10  weeks, NordicTrack was unable to resolve the problems. Plaintiff Canale returned the

11  machine.

12                          Plaintiff Ricardo Mendoza

13      48.     Plaintiff Ricardo Mendoza ("Plaintiff Mendoza") purchased the NordicTrack

14  S22i Commercial Studio Cycle in March 2022.

15      49.     After a few months of Plaintiff Mendoza's ownership, iFIT sent out a software

16  update that caused the bike to fail. After this update, the bike's console would freeze and

17  reboot itself during longer workouts. Plaintiff Mendoza estimates that rides of over 30

18  minutes would cause this problem.

19      50.     Initially these reboots were relatively fast—about five to ten minutes—and

20  only somewhat disruptive, as the rebooted bike would return to Plaintiff Mendoza's

21  workout. As time went on, however, the reboot time got longer, and eventually these

22  reboots would end Plaintiff Mendoza's workouts entirely.

23      51.     Customer service representatives could not offer any solutions to these

24  issues. They explained to Plaintiff Mendoza how he should reset the machine by doing the

25  "paperclip reset." When this did not work, Plaintiff Mendoza was then told that the problem

26  must be with his home's wireless internet. Plaintiff Mendoza, an IT professional, informed

27  iFIT customer support that his upload and download speeds, as well as his Wi-Fi frequency

28  bands, were sufficient to meet the bike's requirements.

KRONENBERGER ROSENFELD

150 Post Street, Suite 520 San Francisco, CA 94108

52.     Plaintiff Mendoza has been given no solution. He still has a bike that he cannot use, and customer support has no help to offer.

**D.      The Console Defect is Widespread.**

53.     Unfortunately, the Console Defect issue rendering Plaintiffs' equipment unusable also plagues countless other consumers.

54.     In online consumer complaint message boards, Facebook groups dedicated to NordicTrack problems and issues such as "Victims of NordicTrack," and other fora, countless consumers report that their equipment cannot adequately run the iFIT software.

55.     These issues may be present from the time of initial purchase or may arise after the installation of an iFIT software update. In both cases, the equipment's functionality rapidly degrades as time passes.

56.     To illustrate, here are a few of many examples of customers having the same problems with their equipment as Plaintiffs have:

June 23 · 🌐

Hello I just purchased the Noritrack 2450 since I've had it home I've had a lot of software issues and they need to replace the monitor I've been going back-and-forth with them for about a month. I did my research before getting this machine and always seem to be one of the best products to get. Since I've joined this group I'm seeing what an awful time most of you were having and I'm a bit concerned with the product I have. If you had to do it all over again what machine would you get😳? Any tips or advice on mine would be great.😳

👍 1                                                                      11 Comments

September 10, 2021 · 🌐

I bought a Nordic Track 4.6 Pro exercise bike on 27/8/21. was delivered on 31/08 and got it set up that night. 3 days later on 03/09 installed an update it was requesting and since then have been receiving Error 65003 whenever I try to load any workout, it won't play. Cleared cache, no result. Turned off/on again, no result. Factory reset, no result. Same error. Contacted Nordic Track customer care and they passed the buck to iFit. Contacted iFit support and they messaged back to confirm some details and I provided all information requested and it's been  nearly a week with no resolution. Factory reset does nothing. Tried to follow a workaround from reddit to access the secret menu and reinstall iFit app on it and even that didn't fix it. Same error 65003. Anyone else had experience with this? The customer service sucks. Was so excited for my new bike and spent $1400 on it and none of the iFit programs load on it. I was really enjoying it for the 3 days that it worked for before the software crashed. 😥

👍 1                                                                      3 Comments



January 8, 2021 · 🌐

iFit buffering issues, dropped connections, errors, unable to load workouts....anybody else having these issues, which has currently rendered our machine (s22i) inoperable. Maybe iFit or NordicTrack can weigh in as well? Wondering if anyone has had these problems, and if so, how were you able to fix it,  if at all? Here's some details that may help narrow down some suggestions you may offer:

- Our bike is 3 weeks old

- We have Spectrum internet (400 mbps speed) with a brand new Netgear modem and the Google Nest mesh system as our router (with 3 hot spots)

- Bike is setup inside the house,  in our bedroom within 10ft of the router and a hot point.

Any help is soo appreciated, and hopefully this thread can help another user in the future

👍😮 2                                                                          19 Comments

👍 Like                          💬 Comment                          ↪ Share

57.     Consumers also relate that Defendants' customer service has failed to remedy these issues and have been completely unhelpful, even after months or years of requests for this to be fixed, as illustrated by one customer's unfortunate experience:

June 4 · 🌐

Does anyone have a fix for random reboots during a workout? I have reinstalled software, run calibration tests, and made certain my bike is updated with the latest firmware. All steps correct the problem for a short while. Then, the problem occurs again. I have corresponded with iFit support for more than 14 months and have not reached a clear resolution. Reapectfully.

58.     In addition, consumers have related:

//

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27  //
28  //

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

★☆☆☆☆                                                    16 hours ago

**Beyond frustrated**

LOVED this treadmill when we first got it. Within 3 months, we now have to completely reboot it EVERY time we want to be the first person working out. That means pushing the reset button on the side of the console and flipping the power switch, then completely resigning into the internet AND THEN resigning in to our iFit accounts. BEFORE you can even just manually go. Oh AND THEN you have to reset all your personal settings. The music. The volume. The SmartAdjust. This is so frustrating. If I wanted to wait 10 minutes for a machine just to work out, I would go to the f'ing gym at 5pm.

This is rapidly spiraling into a very expensive paperweight. 🙁

👍 Useful    ⊷ Share                                                    ⚑

---

★☆☆☆☆                                                    Dec 24, 2021

**NordicTrack/Ifit scam**

Purchased a treadmill three years ago specifically because it was ifit compatible. Due to disability I couldn't use it for awhile. Now I try to come back to it and find that ifit no longer supports the module and it is unlikely to work. Meanwhile I've been paying for a subscription that is useless to me. $3,000+ for something that stops working after three years is nothing but a scam.



59.     On information and belief, Defendants could remedy this problem by replacing the consoles on the exercise equipment with new consoles that contain adequate processing capability to run the iFIT software.

60.     Indeed, some consumers have related that after much back and forth with Defendants' customer service, Defendants sometimes will agree to send replacement monitors to fix the problem.

//

1

**CLASS ACTION ALLEGATIONS**

2      61.    All Plaintiffs bring this action on behalf of themselves and on behalf of the

3      following proposed Nationwide Class, initially defined as follows:

4              All persons in the United States who, for personal, family, or

5              household purposes, and not for resale, purchased Defendants'

6              exercise equipment and experienced the Console Defect.

7      62.    Plaintiffs Ashley Sofranac and Robin Canale also bring this action on behalf

8      of themselves and the following proposed California Subclass, initially defined as follows:

9              All persons in California who, for personal, family, or household

10             purposes, and not for resale, purchased Defendants' exercise

11             equipment and experienced the Console Defect.

12     63.    Plaintiff Ricardo Mendoza also brings this action on behalf of himself and the

13     following proposed Illinois Subclass, initially defined as follows:

14             All persons in Illinois who, for personal, family, or household

15             purposes, and not for resale, purchased Defendants' exercise

16             equipment and experienced the Console Defect.

17     64.    Excluded from the proposed Classes are Defendants, their parents,

18     subsidiaries, affiliates, officers, and directors, and any entity in which each Defendant has

19     a controlling interest.

20     65.    Plaintiffs reserve the right to re-define any of the class definitions prior to

21     class certification and after having the opportunity to conduct discovery.

22     66.    The claims of all Class members derive directly from a single course of

23     conduct by Defendants. Defendants have engaged and continue to engage in uniform and

24     standardized conduct toward the Class members. Defendants do not differentiate, in

25     degree of care or candor, in their actions or inactions, or the content of their statements or

26     omissions, among individual Class members.

27     67.    Certification of Plaintiffs' claims is appropriate because Plaintiffs can prove

28     the elements of Plaintiffs' claims on a class-wide basis using the same evidence as would

1   be used to prove those elements in individual actions alleging the same claim.

2   68.   Accordingly, Plaintiffs bring this lawsuit as a class action on Plaintiffs' own

3   behalf and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23. This

4   action satisfies the numerosity, commonality, typicality, adequacy, predominance, and

5   superiority requirements of these provisions.

6   69.   Specifically, this action has been properly brought and may properly be

7   maintained as a class action under Rule 23(a)(1–4), Rule 23(b)(1), (2), or (3), and/or Rule

8   23(c)(4) of the Federal Rules of Civil Procedure.

9   70.   **Numerosity.** (Fed. R. Civ. P. 23(a)(1)). The members of the proposed

10  Classes are so numerous that their individual joinder would be impracticable. While the

11  exact number is not known at this time, it is generally ascertainable by appropriate

12  discovery, and it is believed the class includes many tens of thousands of members. The

13  precise number of Class members, and their addresses, are unknown to Plaintiffs at this

14  time, but can be ascertained from Defendants' records.

15  71.   **Commonality and Predominance.** (Fed. R. Civ. P. 23(a)(2); 23(b)(3)).

16  Common questions of law and fact exist as to all Class members. These questions

17  predominate over the questions affecting only individual Class members. The common

18  legal and factual questions include, without limitation:

19          (a)   whether Defendants breached their written warranties to Plaintiffs and

20  the classes;

21          (b)   whether Defendants breached their implied warranties to Plaintiffs and

22  the classes;

23          (c)   whether Defendants' exercise equipment contains consoles that are

24  incapable of operating the iFIT software; and

25          (d)   whether Defendants have failed to repair Plaintiffs' and the Class

26  members' exercise equipment so that it can operate the iFIT software.

27  72.   **Typicality of Claims.** (Fed. R. Civ. P. 23(a)(3)). The claims of the Plaintiffs

28  and the respective Classes are based on the same legal theories and arise from the same

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   unlawful and willful conduct of Defendants, resulting in the same injury to the Plaintiffs and

2   the respective Classes. Plaintiffs and all Class members are similarly affected by

3   Defendants' wrongful conduct and were damaged in the same way. Plaintiffs' interests

4   coincide with, and are not antagonistic to, those of the other Class members. Plaintiffs

5   have been damaged by the same wrongdoing set forth in this Complaint. Plaintiffs and the

6   Class members would not have purchased or would have been willing to purchase only at

7   a lower price, Defendants' exercise equipment had they known that it could not operate

8   the iFIT software.

9        73.   **Adequacy of Representation.** (Fed. R. Civ. P. 23(a)(4)). Plaintiffs are

10   adequate representatives of the Classes because their interests do not conflict with the

11   interests of the Class members, and they have retained counsel competent and

12   experienced in complex class action, business competition, and consumer litigation.

13   Plaintiffs and their counsel will fairly and adequately protect the interests of the Class

14   members.

15        74.   **Superiority of a Class Action.** (Fed. R. Civ. P. 23(b)(3)). A class action is

16   superior to other available means for the fair and efficient adjudication of the claims of

17   Plaintiffs and Class members. There is no special interest in Class members individually

18   controlling the prosecution of separate actions. The damages suffered by individual Class

19   members, while significant, are small given the burden and expense of individual

20   prosecution of the complex and extensive litigation necessitated by Defendants' conduct.

21   Further, it would be virtually impossible for the Class members individually to effectively

22   redress the wrongs done to them. And, even if Class members themselves could afford

23   such individual litigation, the court system could not, given the thousands or even millions

24   of cases that would need to be filed. Individualized litigation would also present a potential

25   for inconsistent or contradictory judgments. Individualized litigation would increase the

26   delay and expense to all parties and the court system, given the complex legal and factual

27   issues involved. By contrast, the class action device presents far fewer management

28   difficulties and provides the benefits of single adjudication, economy of scale, and

1   comprehensive supervision by a single court.

2   75.   **Risk of Inconsistent or Dispositive Adjudications and the**

3   **Appropriateness of Final Injunctive or Declaratory Relief.** (Fed. R. Civ. P. 23(b)(1) and

4   (2)). In the alternative, this action may properly be maintained as a class action, because:

5   (a)   the prosecution of separate actions by individual Class members

6   would create a risk of inconsistent or varying adjudication with respect to individual Class

7   members, which would establish incompatible standards of conduct for Defendants; or

8   (b)   the prosecution of separate actions by individual Class members

9   would create a risk of adjudications with respect to individual Class members which would,

10   as a practical matter, be dispositive of the interests of other Class members not parties to

11   the adjudications, or substantially impair or impede their ability to protect their interests; or

12   (c)   Defendants have acted or refused to act on grounds generally

13   applicable to the Classes, thereby making appropriate final injunctive or corresponding

14   declaratory relief with respect to the Classes as a whole.

15   <center>**FIRST CAUSE OF ACTION**</center>

16   <center>**(Breach of Written and Implied Warranties under the Magnuson-Moss Warranty**</center>

17   <center>**Act, 15 U.S.C. §2301, *et seq*. (On Behalf of Plaintiffs and the Classes))**</center>

18   76.   Plaintiffs incorporate by reference all allegations in this Complaint and

19   restate them as if fully set forth herein.

20   77.   Defendants' exercise equipment is a consumer product as defined by 15

21   U.S.C. §2301(1).

22   78.   Plaintiffs and the Class members are consumers as defined in 15 U.S.C.

23   §2301(3).

24   79.   Defendants are suppliers and warrantors as defined in 15 U.S.C. §§2301(4)

25   and (5).

26   80.   15 U.S.C. §2310(d) is satisfied because Plaintiffs properly invoke the

27   jurisdiction of this Court under CAFA.

28   81.   15 U.S.C. §2310(d)(1) provides a cause of action for any consumer who is

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1   damaged by the failure of a warrantor to comply with written and implied warranties.

2       82.    Defendants provided Plaintiffs and Class members "written warranties" within

3   the meaning of 15 U.S.C. §2301(6), including that the exercise equipment would operate

4   the iFIT software.

5       83.    Defendants also impliedly warranted to Plaintiffs and the Class members that

6   the bikes and treadmills were free from defects, of merchantable quality, and fit for the

7   ordinary purposes for which this equipment is intended to be used, including using the iFIT

8   software.

9       84.    Despite repeated demands, Defendants have failed to remedy the Console

10  Defect within a reasonable time, and/or a reasonable number of attempts, thereby

11  breaching the written and implied warranties.

12      85.    As a result of Defendants' breaches of the written and implied warranties,

13  and Defendants' failure to remedy them within a reasonable time, Plaintiffs and the Class

14  members have suffered damages.

15      86.    In addition, under 15 U.S.C. §2310(d)(2), Plaintiffs and the Class members

16  are entitled to recover a sum equal to the aggregate amount of costs and expenses

17  (including attorney's fees based on actual time expended) determined by the Court to have

18  reasonably been incurred by Plaintiffs and other Class members in connection with the

19  commencement and prosecutions of this action.

20      87.    Furthermore, Plaintiffs and the Classes are entitled to equitable relief under

21  15 U.S.C. §2310(d) and damages as a result of Defendants' violation of their warranties.

22                          **PRAYER FOR RELIEF**

23      WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Classes, pray

24  for relief and judgment against Defendants as follows:

25          (a)    certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil

26  Procedure, appointing Plaintiffs as representatives of the Classes, and designating

27  Plaintiffs' counsel as Class Counsel;

28          (b)    awarding Plaintiffs and the Classes compensatory damages and

KRONENBERGER ROSENFELD
150 Post Street, Suite 520 San Francisco, CA 94108

1  actual damages, trebled, in an amount exceeding $5,000,000, to be determined by proof;

2           (c)     granting declaratory and equitable relief;

3           (d)     awarding Plaintiffs and the Classes the costs of prosecuting this

4  action, including expert witness fees;

5           (e)     awarding Plaintiffs and the Classes reasonable attorney's fees and

6  costs as allowable by law;

7           (f)     awarding pre-judgment and post-judgment interest; and

8           (g)     granting any other relief as this Court may deem just and proper.

9

10  Respectfully Submitted,

11  DATED: September 12, 2022              **KRONENBERGER ROSENFELD, LLP**

12

13                                        By:   s/ Karl S. Kronenberger
                                               Karl S. Kronenberger

14

15                                        **POLLOCK COHEN LLP**
                                          Raphael Janove (*pro hac vice* forthcoming)

16                                        rafi@pollockcohen.com
                                          Adam Pollock (*pro hac vice* forthcoming)

17                                        adam@pollockcohen.com
                                          111 Broadway, Suite 1804

18                                        New York, NY 10006
                                          Telephone: (212) 337-5361

19

20                                        Attorneys for Plaintiffs and the Proposed
                                          Classes

21

22

23

24

25

26

27

28

Case No. _____          19                    **CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs, by and through his undersigned counsel, hereby demands a trial by jury for all questions of fact that can be decided by a jury in the above-entitled action.

Respectfully Submitted,

DATED: September 12, 2022          **KRONENBERGER ROSENFELD, LLP**

By:   ___s/ Karl S. Kronenberger_____
          Karl S. Kronenberger

Attorneys for Plaintiffs and the Proposed Classes